# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| MARY ROLLINS, | ) |
|     Plaintiff, | ) |
| v. | ) No.     4:14CV01976 ERW |
| MIDLAND FUNDING, LLC, | ) |
|     Defendant. | ) |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Midland Funding, LLC's "Motion to Dismiss First Amended Complaint" [ECF No. 16], and Plaintiff Mary Rollins's "Motion for Remand" [ECF No. 20].

**I.      BACKGROUND**

This lawsuit arises out of a previously-adjudicated state court collection suit brought by Midland Funding, LLC[1] ("Midland") against Mary Rollins ("Rollins") for collection of a supposed debt. According to Rollins, Midland filed the collection suit, "Cause No. 14JE-AC02736," on June 5, 2014, in the Circuit Court for Jefferson County, alleging the following: (1) Midland was the assignee of GE Capital Retail Bank ("GE Capital"), the original creditor; (2) there was an agreement between GE Capital and Rollins; (3) GE Capital, and subsequently Midland, had made demand for payment of an outstanding sum of $561.37, but Rollins had

---

[1] Rollins's First Amended Complaint states, "[T]he Gamache Firm filed a lawsuit on behalf of Midland against [Rollins]" [ECF No. 15 at 3]. In its Motion to Dismiss, Midland states, "Midland filed a lawsuit against [Rollins]" [ECF No. 17 at 1]. Because the question of which entity actually filed the lawsuit has not been made an issue in the pending Motions, the difference between these two characterizations is irrelevant to the Court's present analysis. Thus, for purposes of this Order, the Court will characterize the collection suit as having been brought by Midland.

failed and refused to pay [ECF No. 15 at ¶ 15]. Midland obtained default judgment against Rollins.

In October 2014, Rollins initiated the present action by filing suit against Midland in the Circuit Court for Jefferson County, "seek[ing] to challenge [Midland's] litigation misconduct, including but not limited to false representations about the validity and amount of the debt [Rollins] allegedly owed, that went unnoticed by the trial court" [ECF No. 6 at ¶ 2].[2] On November 26, 2014, Midland removed the case to this Court, pursuant to 28 U.S.C. §§ 1331, 1441, and 1446 [ECF No. 1]. Subsequently, Rollins filed her First Amended Complaint, which, like the original petition, alleges the violation of the Fair Debt Collections Practices Act ("FDCPA") [ECF No. 15].

Rollins alleges various conduct by Midland during the collection suit litigation. According to Rollins, Midland failed to attach an affidavit from the original creditor, as well as a "contract or agreement purportedly existing between the original creditor and [Rollins]," the attachment of which Rollins claims was required by Missouri law [ECF No. 15 at ¶¶ 16, 20-21]. Similarly, Midland allegedly failed to attach any records of assignment of Rollins's debt from the original creditor to Midland [ECF No. 15 at ¶ 22]. Relatedly, Rollins claims the "affidavit of indebtedness" Midland did attach was "not made by anyone with personal knowledge about the debt, although [Midland] falsely and deceptively claimed in the affidavit that it did have such personal knowledge" [ECF No. 15 at ¶ 19]. Thus, Rollins alleges Midland sued on the "alleged debt without any way to substantiate the balance owed or even confirm that there was indeed a debt in the first place," adding Midland lacked: (1) valid proof of assignment; (2) valid proof the debt was even owed; and (3) "the required contract needed to obtain judgment" [ECF No. 15 at

---

[2] This same language also appears in Rollins's First Amended Complaint [*See* ECF No. 15 at ¶ 2].

¶¶ 23, 25]. Further, Rollins claims Midland knew it lacked the required evidence and "intend[ed] to take advantage of [Rollins's] dire economic circumstances and unsophistication," knowing Rollins neither had "the resources to hire an attorney to decipher [Midland's] [] affidavit of indebtedness," nor had the ability to "decipher the [] affidavit on her own" [ECF No. 15 at ¶¶ 26-28]. The First Amended Complaint also states, "[Midland] filed the Collection Suit and, in its Motion to Default . . . , actively and falsely represented to the Court (via the [] affidavit of indebtedness that [Midland] did present to the Court) that [Midland] had standing and sufficient proof as to the validity and amount of the debt" [ECF No. 15 at ¶ 29]. "But for these false representations," Rollins argues, Midland "would not have obtained judgment against Plaintiff" [ECF No. 15 at ¶ 30].

Thus, Rollins argues Midland, through this alleged conduct, has violated the FDCPA, 15 U.S.C. § 1692d-f, in particular, by: (1) "[u]tilizing false, unfair, and misleading representations in connection with the collection of a debt"; (2) "[e]ngaging in deceptive and harassing conduct in the collection of a debt"; and (3) "us[ing] unfair and unconscionable practices to attempt to collect the debt" [ECF No. 15 at ¶ 38].[3] Rollins claims she has incurred actual damages including, but limited to, anxiety, frustration, and worry, and she seeks relief in the form of actual damages, statutory damages, costs, and reasonable attorney's fees [ECF No. 15 at ¶ 32].

---

[3] Rollins's factual allegations are not organized separately in relation to the individual FDCPA provisions allegedly violated (i.e., 15 U.S.C. § 1692d, e, and f). Rather, the First Amended Complaint lists various factual allegations under the "Facts" heading; then, under a new heading entitled, "Count I: Violation of the FDCPA," the First Amended Complaint states Midland has committed violations of the FDCPA, including "[u]tilizing false, unfair, and misleading representations in connection with the collection of a debt; 15 U.S.C. § 1692d-e"; "[e]ngaging in deceptive and harassing conduct in the collection of a debt; 15 U.S.C. § 1692d-f"; and "us[ing] unfair and unconscionable practices to attempt to collect the debt; 15 U.S.C. § 1692f " [ECF No. 15 at ¶ 38]. Thus, Rollins does not clearly identify which factual allegations are meant to establish a violation § 1692d, which allegations are meant to establish a violation of § 1692e, or which allegations are meant to establish a violation of § 1692f.

On February 9, 2015, Midland filed the pending Motion to Dismiss, asking the Court to dismiss the case for lack of subject matter jurisdiction under Federal Rule of Civil Procedure ("FRCP") 12(b)(1), or, in the alternative, to dismiss the case for failure to state a claim under FRCP 12(b)(6). On March 13, Rollins filed her Motion to Remand, arguing a ruling in favor of Midland on the issue of subject matter jurisdiction requires the Court to remand the case back to state court rather than dismiss it altogether.

## II.  STANDARD

The purpose of a Rule 12(b)(1) motion is to allow the Court to address the threshold question of jurisdiction, as "judicial economy demands that the issue be decided at the outset rather than deferring it until trial." *Osborn v. U.S.*, 918 F.2d 724, 729 (8th Cir. 1990). "A district court has the authority to dismiss an action for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Johnson v. U.S.*, 534 F.3d 958, 962 (8th Cir. 2008) (internal quotation marks and citation omitted). "Jurisdictional issues, whether they involve questions of law or of fact, are for the court to decide." *Osborn*, 918 F.2d at 729.

Under FRCP 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The notice pleading standard of FRCP 8(a)(2) requires a plaintiff to give "a short and plain statement showing that the pleader is entitled to relief." To meet this standard and to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court accepts "as true all of the factual allegations contained in the complaint," and affords the non-moving party "all reasonable inferences that can be drawn from those allegations" when considering a motion to dismiss. *Jackson v. Nixon*, 747 F.3d 537, 540-41 (8th Cir. 2014) (internal quotations and citation omitted). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Carton v. Gen. Motor Acceptance Corp.*, 611 F.3d 451, 454 (8th Cir. 2010) (internal citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (internal citation omitted). Additionally, "some factual allegations may be so indeterminate that they require further factual enhancement in order to state a claim." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

A well-pleaded complaint may not be dismissed even if it appears proving the claim is unlikely and if the chance of recovery is remote. *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007). However, where the allegations on the face of the complaint show "there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Young v. St. John's Mercy Health Sys.*, No. 10-824, 2011 WL 9155, at *4 (E.D. Mo. Jan. 3, 2011) (internal citation omitted). Further, if a claim fails to allege one of the elements necessary to recovery on a legal theory, that claim must be dismissed for failure to state a claim upon which relief can be granted. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011). Bare assertions constituting merely conclusory allegations failing to establish elements necessary for recovery will not suffice. *See id.* ("Plaintiffs, relying on facts not in the complaint, make bare assertions that [defendants] were not just lenders, but owners that controlled the RICO enterprise . . . these assertions are more of the same conclusory allegation . . . "). Courts must assess the plausibility

of a given claim with reference to the plaintiff's allegations as a whole, not in terms of the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (internal citation omitted). This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III. DISCUSSION

### A. *Motion to Dismiss [ECF No. 16]*

#### 1. The *Rooker-Feldman* Doctrine and Subject Matter Jurisdiction

Midland first argues the present FDCPA claim is barred by the *Rooker-Feldman* doctrine. According to Midland, Rollins's First Amended Complaint "attempts to re-litigate and undo the state court's determination and, thus, is inextricably intertwined with the state court judgment" [ECF No. 17 at 6]. More specifically, Midland states, "In order for [Rollins] to succeed in this case, she must establish that the state court pleadings were insufficient, and such a finding would undermine the Default Judgment" [ECF No. 17 at 7]. Thus, Midland concludes, Rollins's "claims must be summarily dismissed for lack of subject matter jurisdiction" [ECF No. 17 at 8]. In response, Rollins claims she "does not challenge the issuance of the judgment and does not seek to have that judgment overturned" [ECF No. 21 at 7]. Rather, Rollins argues her First Amended Complaint "exclusively addresses" Midland's conduct (i.e., "false representations and unfair litigation practices") in attempting to collect a debt [ECF No. 21 at 7].

Under the *Rooker-Feldman* doctrine, a federal district court lacks subject matter jurisdiction to consider a claim, other than a habeas corpus petition, which "in effect constitutes a challenge to a state court decision." *Ballinger v. Culotta*, 322 F.3d 546, 548 (8th Cir. 2003) (internal citations omitted). The doctrine precludes both straightforward and indirect attempts to

"undermine state court decisions." *Lemonds v. St. Louis County*, 222 F.3d 488, 492 (8th Cir. 2000). In *Ballinger*, the Eighth Circuit Court of Appeals explained:

> District courts may not review state court decisions, "even if those challenges allege that the state court's action was unconstitutional," *Feldman*, 460 U.S. at 486, 103 S.Ct. 1303,[4] because "[f]ederal jurisdiction to review most state court judgments is vested exclusively in the United States Supreme Court," *Lemonds*, 222 F.3d at 492 (citing 28 U.S.C. § 1257; *Feldman*, 460 U.S. at 486, 103 S.Ct. at 1303). A party who was unsuccessful in state court thus "is barred from seeking what in substance would be appellate review of the state judgment in a United States district court based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-1006, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994) (internal citation omitted). This jurisdictional bar extends not only to "straightforward appeals but also [to] more indirect attempts by federal plaintiffs to undermine state court decisions." *Lemonds*, 222 F.3d at 492. Federal district courts thus may not "exercis[e] jurisdiction over general constitutional claims that are 'inextricably intertwined' with specific claims already adjudicated in state court." *Id.* at 492-93 (citations omitted).
>
> A claim brought in federal court is inextricably intertwined with a state court judgment "if the federal claim succeeds only to the extent that the state court wrongly decided the issue before it." *Id.* at 493 (citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring).

322 F.3d at 548-49.

The *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). However, "[t]he doctrine does not apply to cases that raise independent issues." *MSK EyEs Ltd. V. Wells Fargo Bank, Nat. Ass'n*, 546 F.3d 533, 539 (8th Cir. 2008) (citing *Riehm v. Engelking*, 538 F.3d 952, 965 (8th Cir. 2008)). Additionally, the fact a judgment was entered on a party's default does not alter the doctrine's applicability. *Id.* (citing *Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1035 (8th

---

[4] *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

Cir. 1999).

In applying the *Rooker-Feldman* doctrine, the Eighth Circuit Court of Appeals has "distinguished claims attacking the decision of a state court from those attacking an adverse party's actions in obtaining and enforcing that decision[.]" *Id.* ("Because the state court's judgment would still be intact even if Wells Fargo breached the Mutual Release by obtaining that judgment, Appellant's breach of contract claims do not seek 'review and rejection' of that judgment. Likewise, it is possible to conclude Wells Fargo committed various torts in enforcing the judgment without concluding the judgment itself is invalid."). For instance:

> If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief form a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction.

*Riehm*, 538 F.3d at 965 (citing *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003)). Similarly, in cases where this Court has refused to apply *Rooker-Feldman* to dismiss FDCPA claims, judges emphasized the absence of any "challenge [to] the validity of the State court's judgment" or "challenge [to] the underlying debt itself." *See Anderson v. Gamache & Myers, P.C.*, No. 07-336, 2007 WL 1577610, at *6 (E.D. Mo. May 31, 2007) ("In the matter under consideration Plaintiff does not challenge the validity of the State court's judgment; rather, Plaintiff's claim exclusively addresses Worldwide Asset's conduct in attempting to collect a debt in violation of the FDCPA, including its submitting an allegedly false affidavit and attaching a copy of the Cardholder Agreement to the State Petition."); *Copeland v. Kramer & Frank, P.C.*, No. 09-310, 2009 WL 1684661, at *3 (E.D. Mo. June 16, 2009) ("Like the plaintiff in *Anderson*, Copeland's complaint addresses only Kramer & Frank's conduct[] in attempting to collect the debt and does not challenge the underlying debt itself. To succeed, Copeland's claim for damages does not

require a finding that the state court wrongly decided the issues before it."). In *Anderson*, one of the plaintiff's FDCPA claims alleged the collection company defendant had, among other things: (1) used "false, deceptive and/or misleading means to collect or attempt to collect a debt by attaching an affidavit to verify its Petition against Plaintiff even though the affidavit was not based on [the defendant's] personal knowledge as required by Missouri law"; (2) included "false statements in this affidavit"; and (3) made statements in the affidavit which were outside of the knowledge of" the defendant. *Anderson*, 2007 WL 1577610, at *2.

Here, the Court will refrain from applying the *Rooker-Feldman* doctrine to Rollins's First Amended Complaint. Although Rollins's FDCPA claim is certainly related to the state court judgment, her allegations are sufficiently focused on Midland's *conduct* during the state court proceedings. Specifically, the First Amended Complaint expressly states Rollins is "seek[ing] to challenge [Midland's] litigation misconduct," and the allegations which follow (regarding Midland's alleged filing of a false affidavit and alleged filing of a lawsuit with the knowledge it "lacked evidence") support that assertion [ECF No. 15 at ¶ 2]. Rollins is not challenging the state court judgment, but rather Midland's actions in obtaining the judgment. Based on these allegations, a successful claim by Rollins in this Court would still allow the state court judgment to remain intact. Therefore, because the Court refuses to apply *Rooker-Feldman*, Midland's Motion will be denied as to that ground.

### 2. Failure to State a Claim

Midland also argues Rollins has failed to properly state a claim under the FDCPA. First, Midland contends Rollins's claims "are not cognizable under the FDCPA" [ECF No. 17 at 8]. Characterizing the First Amended Complaint as alleging Midland has violated the FDCPA "essentially through the nature and quality of [their] state court pleadings," Midland argues, "The

weight of authority does not support expanding the FDCPA to such claims" [ECF No. 17 at 8]. Second, Midland contends, "Even if the Court finds that Plaintiff's theory of liability is cognizable, Plaintiff's allegations *in this case* fail to support an FDCPA claim" [ECF No. 17 at 11 (emphasis added)].

In essence, the First Amended Complaint is comprised of four thematic groupings of allegations: (1) Midland failed to attach certain documents during the state court proceedings, the attachment of which was required by Missouri law; (2) Midland sued Rollins without the proof required to succeed on its claim, knowing it lacked said proof; (3) by suing Rollins, Midland sought to take advantage of her circumstances; and (4) Midland filed a false affidavit in conjunction with the state court proceedings, in that the affiant falsely claimed to have personal knowledge.

In a general sense, the Court acknowledges valid and properly-stated FDCPA claims may be brought on the basis of litigation activity, including the filing of a pleading or affidavit. *Eckert v. LVNV Funding LLC*, 647 F.Supp.2d 1096, 1103 (E.D. Mo. 2009). However, in this particular case, for the reasons stated *infra*, the Court finds the allegations contained in Rollins's First Amended Complaint fail to state a claim under the FDCPA

**(1) Violation of Missouri Law**

As noted above, Rollins claims Midland, during the state court proceedings, failed to attach an affidavit from the original creditor, as well as a "contract or agreement purportedly existing between the original creditor and [Rollins]," the attachment of which Rollins claims was required by Missouri law [ECF No. 15 at ¶¶ 16, 20-21]. Similarly, Midland also allegedly failed to attach any records of assignment of Rollins's debt from the original creditor to Midland [ECF No. 15 at ¶ 22]. Rollins claims the violation of Missouri law, through failure to attach a

particular document, "constitutes an unfair collection tactic" [ECF No. 15 at ¶ 21].

Even assuming these failures occurred, and further assuming such attachments are required by Missouri law, these allegations do not constitute a valid claim under the FDCPA. Rollins's "unfair tactic" argument is a reference to § 1692f, which prohibits "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. However, § 1692f is not "an enforcement mechanism for other rules of state and federal law." *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 474 (7th Cir. 2007) (refusing to apply § 1692f "to enforce other legal rules," and rejecting the plaintiff's theory that it is unfair or unconscionable "for a debt collector to violate any other rule of positive law"). Further, the Eighth Circuit Court of Appeals has stated, "The FDCPA was designed to provide basic, overarching rules for debt collection activities; it was not meant to convert every violation of a state debt collection law into a federal violation." *Carlson v. First Revenue Assur.*, 359 F.3d 1015, 1018 (8th Cir. 2004).[5] Similarly, the Court does not believe the FDCPA would be violated by the supposed state law violations alleged by Rollins.[6] Therefore, Rollins's allegations of Midland failing to attach certain documents in violation of Missouri law fail to state a claim under the FDCPA.

**(2) Lack of Proof**

As noted above, Rollins makes various "lack of proof" allegations against Midland. She alleges Midland sued on the "alleged debt without any way to substantiate the balance owed or even confirm that there was indeed a debt in the first place," adding Midland lacked: (1) valid proof of assignment; (2) valid proof the debt was even owed; and (3) "the required contract

---

[5] Admittedly, Rollins is not technically alleging the violation of a state *debt collection* law, but the logic from *Carlson* applies equally to the allegations here, especially in light of *Beler*.
[6] Again, this even assumes Rollins is correct in arguing such attachment requirements exist.

needed to obtain judgment" [ECF No. 15 at ¶¶ 23, 25]. Further, Rollins claims Midland knew it "lacked the evidence required in Missouri to prove" standing to sue and "the amount and/or validity of the debt" [ECF No. 15 at ¶ 28].

In arguing these "lack of proof" allegations constitute a claim under the FDCPA, Rollins particularly emphasizes two cases: *Hinten v. Midland Funding, LLC*, No. 2:13CV54, 2013 WL 5739035 (E.D. Mo. Oct. 22, 2013), and *Brewer v. LVNV Funding, LLC*, No. 4:14CV00942, 2014 WL 5420274 (E.D. Mo. Oct. 22, 2014). In *Hinten*, the plaintiffs alleged Midland violated the FDCPA by filing state court judicial collection actions "for the sole purpose of obtaining default judgments or inducing settlement with no intention of further prosecuting the claims," arguing such conduct "constitutes a false or misleading representation because, by filing a lawsuit, defendant represents it intends to continue to prosecute it." *Hinten*, 2013 WL 5739035, at *2. The plaintiffs also alleged Midland filed the state court actions "without sufficient evidence to support the pleadings, without knowledge of sufficient evidence, or without the intent to investigate further," contending such conduct "constitutes a misrepresentation regarding the character, amount, and legal status of the debt and an attempt to collect amounts not expressly authorized by agreement or permitted by law." *Id.* In finding the plaintiffs had stated a claim under the FDCPA, the Court emphasized the allegations of Midland commencing the judicial actions "with no intention of further prosecution . . . and no intention of further seeking evidence[.]" *Id.* at *7. In *Brewer*, where the plaintiff had made similar FDCPA allegations, the Court cited to *Hinten* in determining a claim had been stated, again noting the plaintiff was alleging the defendant "lacked the intention" to "establish its claim." *Brewer*, 2014 WL 5420274, at *2.

In a similar, but distinguishable, FDCPA case, *Harvey v. Great Seneca Financial Corp.*,

453 F.3d 324 (6th Cir. 2006), the plaintiff claimed a debt collector had filed "a lawsuit to collect a purported debt without the means of proving the existence of the debt, the amount of the debt, or that [the debt collector] owned the debt." *Harvey*, 453 F.3d at 325. Further, the plaintiff contended the debt collector had filed the "state-court collection action knowing that it had no documentation to prove the debt." *Id.* at 326 (internal quotations omitted). The plaintiff argued these actions constituted violations of § 1692d and e. *Id.* In evaluating the plaintiff's allegations, the Sixth Circuit stated, "A common-sense reading of Harvey's complaint convinces us that she alleged only that, *at the time of filing*, Seneca and Javitch did not have the means of proving their debt-collection claim," "not that it [was] incapable" of "acquir[ing] the documentation needed to prove its debt-collection claims." *Id.* at 328 (emphasis added). The court added, "The conclusion that Seneca and Javitch had no means of ever proving their claim would therefore be both an unreasonable extension and a strained reading of Harvey's allegation that Seneca and Javitch filed 'a lawsuit to collect a purported debt without the means of proving the existence of the debt, the amount of the debt, or that Seneca owned the debt.'" *Id.* Having characterized the allegations in this way, the court affirmed the trial court's dismissal of the plaintiff's FDCPA claims for failure to state a claim, finding defendants' actions, as alleged (i.e., filing a lawsuit without the *immediate means* of proving the existence, amount, or true owner of the debt), did not constitute harassment or abusive, oppressive, or deceptive conduct under § 1692d or e. *Id.* at 329-333.

These cases are not in conflict with each other, but rather are distinguishable based on the content of the plaintiffs' allegations. Indeed, in both *Hinten* and *Brewer*, the Court acknowledged the *Harvey* decision and simply distinguished it by emphasizing the defendants' alleged lack of intent to further investigate or prove their claims in the state debt-collection

proceedings.  *See Hinten*, 2013 WL 5739035, at *7; *Brewer*, 2014 WL 5420274, at *2.

Understandably, Rollins, in responding to Midland's Motion to Dismiss, characterizes her allegations as looking more like those in *Hinten* and *Brewer* [*See* ECF No. 21 at 10 ("There, *as here*, the plaintiff [in *Hinten*] alleged that Midland violated the FDCPA by filing suit against him without the means or intent to prove its claims for the sole purpose of obtaining default judgments or inducing settlement.") (emphasis added) (internal quotations omitted)].  However, the type of "lack of intent" allegations made by the plaintiffs in *Hinten* and *Brewer* are completely absent from Rollins's First Amended Complaint, and without those allegations, the First Amended Complaint more closely resembles the claims made in *Harvey*.  Thus, the Court construes Rollins's "lack of proof" allegations as merely claiming Midland filed suit without the *immediate means* of proving the existence, amount, or true owner of the debt.

Accordingly, the logic used to dismiss the claims in *Harvey* is also persuasive in this case.  "[A] debt may be properly pursued in court, even if the debt collector does not yet possess adequate proof of its claim."  *Harvey*, 453 F.3d at 333.  By initiating the state court proceedings, Midland "did not implicitly represent . . . that [it] had *in hand* the means to prove [its] claims." *Id.* (emphasis added).  Therefore, this Court finds Rollins's "lack of proof" allegations do not support a claim of Midland "[u]tilizing false, unfair, and misleading representations in connection with the collection of a debt"; "[e]ngaging in deceptive and harassing conduct in the collection of a debt"; or "us[ing] unfair and unconscionable practices to attempt to collect the debt" [*See* ECF No. 15 at ¶ 38].  Thus, Rollins's "lack of proof" allegations fail to state a claim under the FDCPA.

**(3) Taking Advantage of Rollins**

A related set of allegations proposes Midland, by suing Rollins, sought to take advantage

of her circumstances. Specifically, Midland allegedly "intend[ed] to take advantage of [Rollins's] dire economic circumstances and unsophistication," knowing Rollins neither had "the resources to hire an attorney to decipher [Midland's] [] affidavit of indebtedness," nor had the ability to "decipher the [] affidavit on her own" [ECF No. 15 at ¶¶ 26-27].

Again, the First Amended Complaint does not allege Midland never intended on following through on its lawsuit by investigating and proving its claim. Rollins's "lack of proof" allegations merely claim Midland sued without the *immediate means* of proving the existence, amount, or true owner of the debt. Without more, Rollins's additional allegations, claiming Midland sought to take advantage of her by filing the suit, fall short. *See Harvey*, 453 F.3d at 330-31 ("Even when viewed from the perspective of an unsophisticated consumer, the filing of a debt-collection lawsuit without the immediate means of proving the debt does not have the natural consequence of harassing, abusing, or oppressing a debtor. Any attempt to collect a defaulted debt will be unwanted by a debtor, but employing the court system in the way alleged by Harvey cannot be said to be an abusive tactic under the FDCPA."). Under the circumstances alleged,[7] merely suing a debtor, even with knowledge of the debtor's economic circumstances or unsophistication, is not inherently improper under the FDCPA. Thus, these allegations fail to state a claim, as they do not support a claim of Midland "[u]tilizing false, unfair, and misleading representations in connection with the collection of a debt"; "[e]ngaging in deceptive and harassing conduct in the collection of a debt"; or "us[ing] unfair and unconscionable practices to attempt to collect the debt" [*See* ECF No. 15 at ¶ 38].

### (4) False Affidavit

Finally, Rollins makes allegations claiming Midland filed a false affidavit in conjunction

---

[7] Again, the Court construes the First Amended Complaint as merely alleging Midland sued without the *immediate means* of proving the existence, amount, or true owner of the debt.

with the state court proceedings. During the state court proceedings, Midland allegedly filed an "affidavit of indebtedness" [ECF No. 15 at ¶ 17]. However, Rollins alleges the affidavit "was made by [Midland's] employee, not an employee of [Rollins's] original credit[or]" [ECF No. 15 at ¶ 18]. Rollins concludes, "[Midland's] affidavit of indebtedness was *therefore* not made by anyone with personal knowledge about the debt, although [Midland] falsely and deceptively claimed in the affidavit that it did have such personal knowledge" [ECF No. 15 at ¶ 19 (emphasis added)]. Additionally, Rollins claims Midland made "false representations about the validity and amount of the debt" allegedly owed [ECF No. 15 at ¶ 2]. This allegation appears to be related to Midland's affidavit, as the First Amended Complaint later states Midland "actively and falsely represented to the Court (via the bogus affidavit of indebtedness that [Midland] did present to the Court) that Defendant had standing and sufficient proof as to the validity and amount of the debt" [ECF No. 15 at ¶ 29].

This Court acknowledges the filing of an affidavit is subject to the FDCPA and can form the basis of a valid claim under the statute. *Eckert*, 647 F.Supp.2d at 1103. However, the particular factual allegations in Rollins's First Amended Complaint are insufficient to support a plausible claim based on a false affidavit.

The First Amended Complaint does not specifically allege facts showing how the affidavit contained false representations regarding standing, proof of the debt, or amount of the debt. Rather, the only specific factual allegation made by Rollins in an attempt to establish the falsity of Midland's affidavit, or any other statement made by Midland, is her claim the affidavit was made by an employee of Midland, rather than the original creditor. According to Rollins, this fact "therefore" inherently means the affidavit was made without personal knowledge. Thus, in essence, Rollins's allegations read as follows: (1) because the affidavit was not made by the

original creditor, the affidavit was made without personal knowledge; and (2) because the affidavit was made without personal knowledge, the representations made therein (regarding standing, validity of the debt, and amount of the debt) were false and deceptive. Unfortunately for Rollins, the premise of her first point is the type of conclusory statement which this Court is not required to accept as true. This Court need not adopt the unreasonable inference expressly assumed by Rollins: that only a representative of the original creditor could possibly have personal knowledge of an alleged agreement or debt. Finding no other specific allegations in the First Amended Complaint to support Rollins's vague claims of a false affidavit, the Court finds these affidavit-based allegations factually insufficient to properly state a FDCPA claim. *See Braden*, 588 F.3d at 594 (noting "some factual allegations may be so indeterminate that they require further factual enhancement in order to state a claim").

C.  *Conclusion*

Based on the aforementioned deficiencies, Rollins's First Amended Complaint fails to properly state a claim under the FDCPA based on Midland "[u]tilizing false, unfair, and misleading representations in connection with the collection of a debt"; "[e]ngaging in deceptive and harassing conduct in the collection of a debt"; or "us[ing] unfair and unconscionable practices to attempt to collect the debt" [*See* ECF No. 15 at ¶ 38]. Therefore, the Court will grant Midland's Motion to Dismiss. Consequently, the Court will deny Rollins's Motion to Remand, as moot.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Midland Funding, LLC's "Motion to Dismiss First Amended Complaint" [ECF No. 16] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Mary Rollins's "Motion for Remand" [ECF No. 20] is **DENIED as moot.**

Dated this 3rd Day of June, 2015.

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE